[No. B113661. Second Dist., Div. Three. Aug. 31, 1998.]

THE STATE OF CALIFORNIA ex rel. DEPARTMENT OF MOTOR VEHICLES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
PATRICK G. WOOSLEY, Real Party in Interest.

422

COUNSEL

Daniel E. Lungren, Attorney General, David S. Chaney, Deputy Attorney General, David J. Bornstein and Diane Spencer Shaw, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Patrick G. Woosley, in pro. per., Gansinger, Hinshaw, Buckley & Padilla, James M. Gansinger and Jose L. Padilla, Jr., for Real Party in Interest .

OPINION

ALDRICH, J.—

### INTRODUCTION

Petitioner State of California, acting through the Department of Motor Vehicles (DMV), seeks a writ of mandate directing the trial court to vacate the order certifying a class of persons entitled to refund of vehicle license fees on motor vehicles originally sold outside California that were higher than the fees charged similar vehicles first sold within the state.

DMV contends the class certified by the trial court does not conform with the instructions issued by the California Supreme Court in *Woosley* v. *State of California* (1992) 3 Cal.4th 758 [13 Cal.Rptr.2d 30, 838 P.2d 758]. The DMV argues that the "open" tax refund class improperly includes persons who have not yet filed tax refund claims and who have not consented to representation by the class representative. The DMV also contends that the trial court improperly ordered the DMV to provide notice to all the purported members of this open class and to bear the costs of such notice. In addition, the DMV challenges the trial court's appointment of "project contractors" as experts, with access to all DMV files and records, to perform the notice tasks.

We find the class must be limited to persons whose timely claims were rejected within the three years preceding the filing of each of the three

individual cases which have been consolidated. There is no requirement that each claimant consent to representation by Woosley prior to class certification. Once the class is properly defined and notified, persons who otherwise qualify may opt out of the class action. Finally, because of the factual circumstances of this case, in which prior identification of eligible class members may have been rendered impossible or impracticable by the DMV's practice of returning rejected claims up until 1992, the equities require that an order be issued in which the parties, plaintiff Woosley and the DMV, share the expense of notification equally, subject to modification by the trial court as the quality of the parties' participation in the process dictates.

Finally, we find the trial court failed to provide sufficient notice to consider appointment of contractors to perform the tasks involved in notification. This entire matter must be addressed anew.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Patrick G. Woosley, real party in interest, filed an action, No. CA 000499, in July 1978, seeking recovery of illegally assessed vehicle license fees and use taxes, both on individual and class bases. In November 1984, the trial court determined that vehicle license fees and use taxes collected on certain out-of-state vehicles were unconstitutional. The trial court identified and certified two classes: the "discrimination class" consisting of about 2,800,000 persons in California ". . . who from within three years prior to October 20, 1977 [the date Woosley filed a claim for refund] to the date of refund, were charged and paid more license fees or use taxes for registration of vehicles previously registered or titled outside of the State of California because those fees or taxes were based on the actual cost of those vehicles rather than on the statutorily presumed price . . ." and the "Post-1976 Class," consisting of about 14,000,000 persons who since November 14, 1976, paid excess use tax for registration of motor vehicles because of the "illegal abandonment" of the statutory presumption of Revenue and Taxation Code former section 6276. This latter class is no longer an issue.

The state appealed and the Court of Appeal affirmed the trial court's decision.

Upon review, in *Woosley* v. *State of California, supra,* 3 Cal.4th 758, the California Supreme Court affirmed the finding that the disparity between vehicle fees and use taxes for vehicles purchased out-of-state and vehicles purchased in California constituted violation of the commerce clause. However, it reversed the decision of the Court of Appeal regarding the validity of

the post-1976 class. The Supreme Court held that even if the DMV violated the California Administrative Procedure Act when, in November 1976, it altered its practice regarding the collection of use taxes, the proper remedy for such a violation did not encompass a refund of taxes properly due under state law. (*Id.,* at p. 795.)

Before the Supreme Court, the state had argued that the suit improperly was certified as a class action. The Supreme Court, however, did not reach the issue of class certification because it concluded that the *class claim* filed by Woosley was ineffective. (*Woosley* v. *State of California, supra,* 3 Cal.4th at p. 788.) On its own initiative, the court raised and considered the issue of the adequacy of the class claim, concluding ". . . the class claim filed in the present case was not authorized by the statutes governing claims for refunds of vehicle license fees and use taxes. Accordingly, that claim is valid only as to Woosley in his individual capacity, and the class in the present class action properly may include only persons who timely filed valid claims for refunds." (*Ibid.*)

The court reasoned as follows: "The California Constitution expressly provides that actions for tax refunds must be brought in the manner prescribed by the Legislature. Article XIII, section 32, of the California Constitution provides in this regard: 'After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, *in such manner as may be provided by the Legislature.*' (Italics added [in *Woosley.*]) This constitutional limitation rests on the premise that strict legislative control over the manner in which tax refunds may be sought is necessary so that governmental entities may engage in fiscal planning based on expected tax revenues. (See *State Bd. of Equalization* v. *Superior Court* (1985) 39 Cal.3d 633, 638 . . . .)

"Vehicle license fees and use taxes are excise taxes [citation], refunds of which fall within the ambit of article XIII, section 32 of the state Constitution." (*Woosley* v. *State of California, supra,* 3 Cal.4th at p. 789.)

The court pointed out that the Legislature had provided different methods for seeking refunds of vehicle license fees and use taxes. (*Woosley* v. *State of California, supra,* 3 Cal.4th at p. 789.) Both claims for refunds of vehicle license fees and claims for refund of use taxes must be filed within three years after the date of payment. (Veh. Code, §§ 42231, 42232; Rev. & Tax. Code, §§ 6902, 10901.)

In regard to vehicle license fees, the court concluded, "The Legislature . . . has required that a claim for a refund of vehicle license fees must be

filed by '*the person* who has paid the erroneous or excessive fee or penalty, or *his agent on his behalf.*' (Veh. Code § 42231, italics added.) Within the context of this statute, the term 'person' does not include a class, and a class representative who files a claim on behalf of all others similarly situated, without the knowledge or consent of such other persons, is not the agent of the members of the class. (Civ. Code, §§ 2299, 2300; 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency & Employment, §§ 36-40, pp. 49-52.) Accordingly, a class claim for refunds of vehicle license fees, such as the one here at issue, is not authorized by statute." (*Woosley* v. *State of California, supra,* 3 Cal.4th at p. 790, fn. omitted.)

In regard to the method the Legislature provided for seeking refund of use taxes, the court determined that class claims were not contemplated when Woosley's class claim was filed in 1977. (*Woosley* v. *State of California, supra,* 3 Cal.4th at pp. 790-791.) About 10 years later, in 1987, the Legislature amended the applicable provision, Revenue and Taxation Code section 6904, to allow class claims for the first time, but required that each member of the class authorize his or her inclusion in the class and that each member of the class, or the class member's authorized representative, sign the claim. "A class claim for refund of sales and use taxes may not be submitted, as it was in the present case, without the knowledge and express consent of each member of the class." (3 Cal.4th at p. 791.)

"The purpose of this amendment to section 6904, governing claims for refunds of sales and use taxes, was to extend to class claims against the SBE [State Board of Equalization] the 'written authorization requirements' imposed the year before on class claims for refunds filed with the Franchise Tax Board. (Sen. Com. on Rev. and Tax., Analyses of Measures Heard (1987-1988 Sess.) p. 417.) In 1986, the Legislature had amended section 19055, governing claims for refunds of personal income taxes, and section 26074, governing claims for refunds of bank and corporate taxes, to add language nearly identical to that later added to section 6904. Both the 1987 amendment to section 6904 and the 1986 amendments to sections 19055 and 26074 were intended to spare the state the substantial administrative costs associated with identifying and notifying class members once a case had been certified as a class action. (Sen. Com. on Rev. and Tax., Analyses of Measures Heard, *supra,* p. 417.)" (*Woosley* v. *State of California, supra,* 3 Cal.4th at p. 791.)

This finding of legislative intent indicates that it is the class representative's responsibility to identify the class members and provide evidence of each member's consent to representation prior to filing *a class claim.* If this

were done, in a subsequent class action, there would be no need to notify potential class members, at considerable savings to the state.

The court expressly rejected plaintiff's contention, based upon his reading of *American Pipe & Construction Co.* v. *Utah* (1974) 414 U.S. 538 [94 S.Ct. 756, 38 L.Ed.2d 713], that the disallowance of his class claim would require notice to " '. . . each putative class member that (1) they were entitled to a refund of use taxes and license fees, and (2) the time to file a claim for refund was running from the date of notice.' " (*Woosley* v. *State of California, supra,* 3 Cal.4th. at pp. 792-793.)[1]

"Whatever merit there may be in plaintiff's argument that the time for putative class members to file claims has been tolled, we are unaware of any requirement that notice be given to persons affected by such tolling of the period in which to file a claim. The decision in *American Pipe* required only that persons who will be included in the class be notified so that they have an opportunity to opt out of the class and thus not be bound by the resulting judgment. Neither the decision in *American Pipe, supra,* 414 U.S. 538 [94 S.Ct. 756], nor any other authority of which we are aware, requires that persons who are outside the class be notified of that fact." (*Woosley* v. *State of California, supra,* 3 Cal.4th at p. 793.)

The court further determined that its holding that the Legislature had not authorized filing of class claims seeking refunds of vehicle license fees and use taxes should be applied retroactively. (*Woosley* v. *State of California, supra,* 3 Cal.4th at p. 794.)

In remanding the cause, the court required the Court of Appeal to "direct the trial court to amend the description of the class (1) to add to the class those persons who paid higher fees and taxes because of the DMV's application of section 10753.2's depreciation schedule in a fashion different for vehicles originally purchased outside California [citation], (2) to delete from the class those persons who paid use taxes after November 1976 (when the DMV ceased its discriminatory practice) based on the actual cost of a vehicle, (3) to delete from the class those persons who paid use taxes on vehicles purchased outside the state from a manufacturer or dealer (because the use tax collected in those circumstances equaled the sales tax collected when a similar vehicle was purchased from a manufacturer or dealer in

---

[1]The Supreme Court did not address plaintiff's contention that the claims of all of the class members had been tolled during the pendency of the action, "because that issue affects only those persons who did not file valid claims and who, therefore, are not included in the present class." (3 Cal.4th at p. 793.)

California), and (4) to delete from the class those persons who have not timely filed a valid claim for a refund." *(Woosley* v. *State of California, supra,* 3 Cal.4th at p. 795.)

The court recognized that the opinion would result "in a substantial reduction in the amount of the judgment," and therefore the trial court should reconsider the amount of its award of attorney fees to counsel for the class and the award to Woosley as class representative. *(Woosley* v. *State of California, supra,* 3 Cal.4th at p. 795.)

The Court of Appeal remanded the cause to the trial court on March 12, 1993.[2]

On July 2, 1996, plaintiff filed a motion to redefine the class to comport with the opinion of the Supreme Court and to determine its ascertainability. In March 1997, the trial court consolidated No. CA 000499 and a "savings" action which Woosley had filed in March 1988, No. 001085, and trial was set for November 1997. On April 25, 1997, the trial court certified a class that was defined as "all persons who, up to the date of refund, have filed or will file claims for refund that are not barred by the statute of limitations." The trial court also granted plaintiff's motion to consolidate these two cases with another savings case, No. BC 165106[3] which has been filed. Class certification was subsequently granted for this last case as well.

On June 2, 1997, the trial court modified the class to exclude reference to use taxes because the plaintiff had failed to prove numerosity. The definition of the class was amended to strike the words "or will file" since only claims that had been filed "by the time of refund" would be entitled to refund.[4] The trial court also urged plaintiff to amend his complaint to include an injunction cause of action requiring reclassification of vehicles purchased out-of-state. DMV objected, but a first amended consolidated class action complaint and revisions were filed on June 20, 1997. DMV answered with a general denial.

On June 17, 1997, the trial court ruled that an expert would be appointed pursuant to Evidence Code section 730 to advise the court on issues related

---

[2]In its response to plaintiff's opposition to the writ petition, the DMV contests the right of the trial court to order any relief in No. CA000499 because of the plaintiff's failure to bring the case to trial within the three-year period prescribed by Code of Civil Procedure section 583.320, subdivision (a)(3). This issue was not raised in the petition and the parties have not cited any portion of the record before us reflecting the parties' actions and contentions on this issue below.

[3]The record does not include the date this last action was filed. Plaintiff indicates in a motion for modification that this action was filed in 1997.

[4]This was the explanation given by the trial court. The petition raises the issue as to the cut-off date for filing claims, the prerequisite to becoming a class member.

to notice. The parties were ordered to submit resumes of two persons qualified to act as the court's expert by June 24, 1997. The trial court also ordered that class notice would be by first class mail, posting in DMV offices, published notice, posting on the Internet and press release. The parties were ordered to meet and confer concerning the specifics of the posting of notice in DMV offices; plaintiff was directed to prepare a list of organizations and entities to whom the press release would be issued, in addition to the DMV's customary distribution list. Also, the parties were to begin the process of selecting a mass mailing house to handle the first class notice. DMV was ordered to begin writing a computer program to create the mailing list of all present and former owners of nonresident vehicles identifiable from the electronic records of the DMV.

At the July 2, 1997, hearing, instead of selecting an expert to advise the court, the trial court without prior notice[5] appointed the two companies recommended by plaintiff, Kinsella Communications, Ltd. (Kinsella) and Rust Consulting, Inc. (Rust), as "project contractors." The trial court rejected the DMV's proposed protective order. The trial court ordered the DMV to ". . . immediately afford the contractors all necessary and reasonable access to its files, computer data bases, personnel, et cetera, to give the contractors the maximum opportunity to swiftly and efficiently prepare a mailing data base. [¶] If the contractors determine that they can create a data base more quickly than the DMV can, then the contractors are to take over that project." The DMV was ordered to promptly pay all reasonable expenses of the contractors. A formal protective order was entered by the trial court the next day. Upon plaintiff's request, the trial date was continued to January 1998.

On July 9, 1997, the DMV filed its petition, challenging the trial court's orders. This court issued an alternative writ on August 21, 1997. In the meantime, on August 8, 1997, the trial court conducted a hearing regarding the methods of notice to the certified classes in the consolidated cases. The parties submitted comments and objections to various aspects of the notification program that the contractors, Kinsella and Rust, had submitted. The trial court ordered the report and plan approved, with certain modifications, noting revisions which resulted in reductions in the estimated cost of notice. "If the aggregate cost still exceeds $3 million, it is because the DMV has continued to collect unconstitutional fees from 5.8 million citizens since the Supreme Court's 1992 ruling in *Woosley* vs. *State of California* [(1992)] 3 Cal.4th 758. The DMV has only itself to blame." The trial court ordered

---

[5]In his reply to the DMV's petition, plaintiff admits the appointment was without prior notice but contends the DMV did not object.

notice to persons seeking two types of relief: (1) refunds, within the three-year statute of limitations, and (2) a mandatory injunction requiring the DMV to reclassify the subject vehicles. In its 15-page order, the trial court explains its rationale for the various orders challenged by the writ petition.[6]

On September 15, 1997, the trial court issued a minute order in which the trial court made some "observations with respect to the Alternative Writ" including the statement that the order requiring a search of the DMV's records was probably moot, and requesting direction as to who should pay the cost of the contractors/consultants' fees (now exceeding $80,000) in the event the court decides the class should not proceed.

On September 18, 1997, this court ordered the trial court to issue an order directing Kinsella and Rust *"immediately"* to stop all work on this case, referring to the stay order issued on August 21, 1997.

## CONTENTIONS

The DMV contends (1) the trial court erroneously certified a class which includes persons who have filed and will file claims for refund and who have not consented to representation by plaintiff in the class action; (2) the trial court erroneously required the DMV to identify and give notice to "millions" of potential class members—persons who have not yet filed claims and

---

[6]The trial court pointed out that the DMV had admitted that it has continued to collect fees declared unconstitutional by the Supreme Court in 1992 and had declared it had no intention of stopping the practice. The DMV estimated that it collected "roughly $1 billion dollars in the 18 years preceding the 1992 *Woosley* decision," and estimates that it continues to collect between $25 and $30 million a year in unconstitutional fees.

"By ruling that each person must file his or her own claim, the Supreme Court spared the DMV a $1 billion refund. It appears that the DMV has returned that gesture by exploiting a kind of 'catch-22.' It continues to impose unconstitutional fees unless individuals file refund claims [and, apparently, even after they do], and yet the public lacks sufficient information to file claims."

The DMV has indicated that it would reclassify a vehicle only if the owner files a claim. Of the about 400 claims the DMV acknowledges receiving, the DMV admits that not a single claim has been processed.

In regard to notice to "non-class members," the trial court pointed out that the DMV stated it would not voluntarily reclassify any of the subject vehicles, and stated, "Every one of the 5.8 million persons culled from the DMV's own records is a <u>present</u> member of the injunction class. [¶] The class has a right to know that their rights are being litigated, and that they have the opportunity to intervene, or to retain their own counsel. [¶] The class also has the right to know that the DMV has promised that if class members file a claim in this litigation that the DMV will reclassify their vehicle, that the illegal charges then will end, that they will cease to be a member of the class, and that they will not have to risk the uncertainties of a trial."

The trial court stated that the class was not an "open" class of indefinite span as defendants suggest. "It is an opt-in class, and when the opt-in period expires, probably in December, the class membership will be permanently fixed."

consented to be represented; and (3) the trial court's appointment of project contractors to give notice of the court action and administrative claims right to persons who purchased vehicles outside California was in excess of its jurisdiction.

## DISCUSSION

### 1. *Class Composition*

The Supreme Court's opinion in *Woosley* makes it clear that for No. CA000499 the class is limited to persons who had filed claims for refund. "[W]e hold that the class claim filed in the present case was not authorized by the statutes governing claims for refunds of vehicle license fees and use taxes. Accordingly, that claim is valid only as to Woosley in his individual capacity, and the class in the present class action properly may include only persons who timely filed valid claims for refunds." (*Woosley* v. *State of California, supra,* 3 Cal.4th at p. 788.) In particular, the court held Revenue and Taxation Code section 10901 does not authorize class claims for refund of vehicle license fees. The court also held that there was no class claim procedure available for refund of use taxes until 1987 and then such a claim required express consent to representation by the class representative. Inasmuch as the trial court did not certify a class action for persons who had paid excess use taxes, due to the lack of numerosity, the provisions of the Revenue and Taxation Code for refund of use taxes are not applicable to the challenged class which remains.

■ The DMV argues that the statutory limitations on *class claims* limits the composition of the class action in the three consolidated cases. This is a misreading of *Woosley* and the precedents the DMV cites.

Two cases subsequent to *Woosley* cited by the DMV discuss the requirements for class claims for refund of taxes. *Farrar* v. *Franchise Tax Bd.* (1993) 15 Cal.App.4th 10 [18 Cal.Rptr.2d 611], concerned income taxes and held that the plaintiffs were not entitled to maintain a class action for refund of income taxes, since their administrative claim did not comply with the applicable statute, Revenue and Taxation Code former section 19055. Section 19055, like section 6904 discussed in *Woosley,* required the claim be accompanied by a written, signed authorization from each taxpayer proposed as a class member. The *Farrar* court held, based upon the analysis of *Woosley,* that the doctrine of substantial compliance does not apply to class claims for refunds: Strict compliance is required. (15 Cal.App.4th at pp. 19, 20-21.)

*Neecke* v. *City of Mill Valley* (1995) 39 Cal.App.4th 946 [46 Cal.Rptr.2d 266], affirmed the trial court's denial of class certification in an action for

refund of local property taxes based upon the decision in *Woosley*. The court observed that the statutory claims provisions for refund of improperly collected property taxes were even more restrictive than those in issue in *Woosley*, and held a class action could not be based on Neecke's individual claim.

These authorities do not address the requirements of class actions on behalf of taxpayers who have filed *individual claims*. The court in *Farrar* v. *Franchise Tax Bd., supra,* 15 Cal.App.4th 10, 17, did observe that such class actions are possible. The court in *Neecke* v. *City of Mill Valley, supra,* 39 Cal.App.4th 946, 963, merely asserted that the general statute authorizing class actions, Code of Civil Procedure section 382, could not be used to eliminate the requirement of complying with the claim statute. In *Thomas* v. *City of East Palo Alto* (1997) 53 Cal.App.4th 1084, 1095 [62 Cal.Rptr.2d 185], the court affirmed the approval of a class made up of individual taxpayers who had filed separate administrative claims for tax refunds.

By mistakenly applying the class claims requirements to the instant class action, the DMV takes the position that all class members must have consented to representation by Woosley, a requirement for a *class claim* for refund of *use taxes*.[7] There is no requirement that persons identified as class members in a class action provide their consent to representation prior to certification of a class. Once the class is certified and class members notified, due process will be served by the opportunity of any notified class member to opt out. (*Phillips Petroleum Co.* v. *Shutts* (1985) 472 U.S. 797, 813 [105 S.Ct. 2965, 2975, 86 L.Ed.2d 628].)

*Woosley* did not hold that there cannot be class actions for refund of license fees. In fact, *Woosley* recognized the validity of class actions to seek refunds of sales and use taxes, citing *Javor* v. *State Board of Equalization* (1974) 12 Cal.3d 790 [117 Cal.Rptr. 305, 527 P.2d 1153] [class action against retailers and State Board of Equalization by purchasers of motor vehicles and equipment for sales tax overcharge].) (*Woosley* v. *State of California, supra,* 3 Cal.4th at p. 788.)

▇▇▇ On the other hand, the DMV's criticism of the "open" aspect of the class has merit. There is no basis for creating an "open" class, allowing persons who have not already done so to file claims and become part of the class. There are three separate "classes" resulting from the filing of three

---

[7]In addition, the consent requirement is not part of the vehicle license fee refund claim procedure. Revenue and Taxation Code section 6904, which contains a consent requirement, is not applicable to the vehicle license fee refund class claims and there is no such class claim at issue; the use tax claimants are not part of the certified class.

separate actions which have been consolidated. Each of these three classes is limited to persons whose timely claims—i.e., those filed within three years of the date of payment of the unconstitutional tax—were rejected within three years of the filing of a court action challenging the tax. (*Piazza Properties, Ltd.* v. *Department of Motor Vehicles* (1977) 71 Cal.App.3d 622, 628-629 [138 Cal.Rptr. 357]; Code Civ. Proc., § 338.) In other words, not all persons who filed claims since the filing of the initial action in 1976 are automatically members of the consolidated class action. Each must demonstrate both the filing of a timely valid claim within the period provided by the claims statute and the rejection of that claim within the statute of limitations for bringing a subsequent action based on that rejected claim— three years unless the statute of limitations had been tolled in his or her specific case.[8]

It is the plaintiff's burden to identify class members and prove sufficient numbers to justify the certification of a class. (Civ. Code, § 1781; *Caro* v. *Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 654 [22 Cal.Rptr.2d 419].)

Plaintiff contends the Supreme Court did not revise the class definition initially approved by the trial court and that the definition includes persons who file claims up to the time of refund. The original class definition included "[a]ll persons in the State of California who from within three years prior to October 20, 1977 to the date of refund," were charged and paid the unconstitutional fees. Plaintiff asserts that the trial court implemented the directives of the Supreme Court by adding the requirement that the class member had filed a claim not barred by the statute of limitations.

This argument ignores the clear ruling of the Supreme Court that only those who had filed claims were qualified to be members of the class. Its directive to modify the class definition expressly ordered the deletion of "those persons who have not timely filed a valid claim for a refund." (*Woosley* v. *State of California, supra,* 3 Cal.4th at p. 795.) Plaintiff's interpretation, depending on the phrase "to the time of refund," ignores the fact that the claims requirement is a prerequisite to legal action.[9] Implicit in the Supreme Court's order so limiting the class was the exclusion of persons

---

[8]The appropriate statute of limitations is Code of Civil Procedure section 338. Upon the court's request on rehearing, the parties extensively briefed this issue. (See discussion, *post.*)

In situations in which the statute has been tolled, the claimant's cause of action is deemed to have accrued before he or she is otherwise qualified as a class member.

[9]Plaintiff argues that the court's use of the present perfect verb tense ("those persons who have not timely filed") reveals an intent to include persons who will file claims. However, this interpretation is contrary to the court's explanation regarding the requirements of a valid claim.

who paid unconstitutional fees up to the time of refund who had not filed a claim prior to the lawsuit.

### 2. *Statute of Limitations*.

The *Woosley* court did not address the statute of limitations applicable to an action based upon a claim for refund, its focus being the invalidity of a class claim for refund.

The Supreme Court has clarified that only those who have filed valid, timely claims are eligible for class membership. In order to define the classes of Woosley's three actions, it is necessary to take the next step and apply the requirements of any applicable statute of limitations for bringing an action based on such claims.

■ Because there is no specific statute of limitations applicable to claims for refunds of vehicle license fees in either the Vehicle Code or the Revenue and Taxation Code, the appropriate statute is that set forth in Code of Civil Procedure section 338, subdivision (a): three years for "[a]n action upon a liability created by statute, other than a penalty or forfeiture." "Civil actions, without exception, can only be commenced within the periods prescribed in this title [Title 2 of Part 2, Civil Actions], after the cause of action shall have accrued, unless where, in special cases, a different limitation is prescribed by statute." (Code Civ. Proc., § 312.)

The statute commences to run upon the accrual of the cause of action. The cause of action for a refund does not accrue until the claim for refund has been denied or rejected in some manner. There are no applicable statutory provisions which render the claim "deemed denied" after a certain period of inaction by the body reviewing the claim.

### a. *The Pre-1992 Claims*

■ The record reveals that during the period prior to the *Woosley* decision, the DMV returned claims for refunds. The exact nature of the DMV's practice during this period has not been established by competent evidence. This must be done before the pre-1992 class can be defined.

It will be incumbent upon the trial court to make factual findings regarding the nature of any "notice" claimants may have received and the sufficiency of such notice. If it is determined there was no adequate notice of the rejection of a claim, the claimants' cause of action has not as yet accrued, and as long as he or she submitted a valid timely claim to the DMV, the

claimant is eligible for class membership. The statute of limitations has not begun to run. If, on the other hand, the DMV provided adequate due process notice, then membership in the class is limited to those whose claim was denied or rejected within the three-year statutory period of Code of Civil Procedure section 338, subdivision (a).

### b. *The Post-1992 Claims*

The record indicates that since 1992, the DMV has retained all claims for refund. Under this scenario, it cannot be said that the statute has commenced to run. Indeed, there is evidence that the post-1992 claimants received letters referring to the California Supreme Court's ruling in *Woosley* and explaining that the requests for refund of vehicle license fees would be held in file pending receipt of the final ruling by the courts as to who is entitled to refunds and how refunds are to be determined. Under these circumstances, the statute of limitations has been tolled until further action by the DMV.

### 3. *Notification*

In *Woosley,* the Supreme Court pointed out that the applicable class claim procedures ". . . were intended to spare the state the substantial administrative costs associated with identifying and notifying class members once a case had been certified as a class action. [Citation.]" (*Woosley* v. *State of California, supra,* 3 Cal.4th at p. 791.) It is obvious that a class claim identifying all class members who have consented to representation by the class claim representative simplifies the notification process in the subsequent class action. However, in No. CA000499, there was no valid class claim. Apparently, this is true for the subsequent "savings" actions as well.

In the absence of a class claim complying with the statutory requirements, the parties here are not spared the difficulties of identification and notification of class members. The problem faced by the trial court in the instant consolidated action is that member identification of pre-1992 claimants is extremely difficult. Identification of members of the post-1992 claimants should be easier.

The trial court's approach is to notify all potential class members, including all those who *could have filed* a claim for refund, thereby requiring notification of all persons who paid vehicle license fees on vehicles that were originally purchased out-of-state. Upon notice, the person would be allowed to file the required claim and to consent to representation by the class representative, or opt out of the class action altogether. As explained

above, the resulting class would be overinclusive.[10] In addition, the trial court has imposed the cost of such notification on the DMV alone.

The DMV argues that each class member must consent to representation by plaintiff. Because we are beyond the class claim stage, no prior authorization for representation is required. In any event, each *potential* class member in the No. CA000499 class, as well as those identified by plaintiff as members of the other two classes, will have the opportunity to opt out of the class action altogether, as in the typical class action situation.

In *Woosley,* the Supreme Court addressed plaintiff's contention, that if the class claim was disallowed, " 'notice would have to be given to each putative class member that (1) they were entitled to a refund of use taxes and license fees, and (2) the time to file a claim for refund was running from the date of notice.' " (*Woosley* v. *State of California, supra,* 3 Cal.4th at p. 793.) The Supreme Court soundly rejected the contention that notice was required.

"Whatever merit there may be in plaintiff's argument that the time for putative class members to file claims has been tolled, we are unaware of any requirement that notice be given to persons affected by such tolling of the period in which to file a claim. The decision in *American Pipe* required only that persons who will be included in the class be notified so that they have an opportunity to opt out of the class and thus not be bound by the resulting judgment. Neither the decision in *American Pipe, supra,* 414 U.S. 538, nor any other authority of which we are aware, requires that persons who are outside the class be notified of that fact." (*Woosley* v. *State of California, supra,* 3 Cal.4th at p. 793.)

■ The present plan adopted by the trial court, in part resulting from the failure of the DMV to retain claims prior to the 1992 *Woosley* decision and the apparent inability to identify such claimants now, requires a "redefinition" of the pre-1992 class members *for notification purposes only* to include all persons who paid unconstitutional vehicle license fees. In order to participate in the class action, however, each member would have to declare

---

[10]In addition to a class for persons who paid unconstitutional license fees and filed timely claims, the trial court has certified a class based upon an injunctive/mandamus cause of action for reclassification of vehicles that were purchased out-of-state, as these vehicles continue to be subject to discriminatory rates based upon the depreciation schedule employed by the DMV. The propriety of such an action against a taxing state agency is not an issue raised by this petition. The class certification issues of such an action are different, as there would be no requirement to file a claim for *refund.* The DMV argues that reclassification could occur when claims are filed.

We do not address this issue or the related issues concerning class identification and certification.

that in fact he or she did file a timely claim for refund within the three-year period following the payment of the vehicle license fee. In addition, it is necessary to determine for each whether or not the statute of limitations had run prior to the filing of each of the three separate actions, if in fact it commenced to run at all.

Under these unusual circumstances, notice would be provided to persons who ultimately could not qualify for class membership. Ordinarily, it would be the plaintiff's burden to identify class members and establish their numerosity. However, because of the particular circumstances presented here, we find it would be equitable in this case to require the DMV to share the costs of notification with plaintiff for the purposes of identifying potential class members. Plaintiff has the responsibility of determining the eligibility of each for inclusion in the litigation class. The trial court shall have the discretion to modify the costs burdens in the event the parties' conduct justifies.

Notification of the post-1992 claimants, of course, is limited to those persons for whom the DMV has a record of a valid timely claim. The trial court may impose the costs of notification of defined class members on either party. (Civ. Code, § 1781, subd. (d).)

### 4. *The Consultant/Contractors*

At the hearing of June 17, 1997, the trial court ruled that it would retain an expert to advise the court regarding the issues of the mailing list and the mailing pursuant to Evidence Code section 730 et seq., with the DMV to bear the cost. The parties were ordered each to submit two resumes of persons qualified to act as experts, and plaintiff was directed to contact a specific person identified by the court to determine his willingness to serve and his fees.

The trial court set June 26, 1997, on the nonappearance calendar for the selection of the court's expert, and set July 2, 1997, for a status conference "to discuss the issues of the mailing list preparation, the preparation of a program to create the mailing list, and the mailing of the 1st class mail notice. The Court appointed expert is to attend the Status Conference. . . ."

The DMV submitted the resumes of two DMV employees. Plaintiff recommended the appointment of either Rust, Kinsella or Gilardi & Co., and submitted the resume of these firms.

At the status conference on July 2, 1997, the trial court, instead of selecting an expert to advise the court, pursuant to Evidence Code section

730 et seq., as the trial court had intended, asked the parties if they objected to the selection of Rust and Kinsella as both the court's expert *and* the contractors for the campaign notice. There was no immediate objection to the trial court's intended ruling.

However, the DMV representative expressed concern about the amount of access to confidential information. Counsel for the DMV objected to the appointment of out-of-state contractors and suggested that if the state was to pay for the consultants, the state should select the firms to do the mailing.

The trial court decided the appointed contractors would provide sufficient expertise and the cost of a separate court's expert could be avoided. The trial court made its selection of Rust and Kinsella. It then ordered the DMV "to promptly pay all reasonable expenses of the contractors." Also, the trial court ordered, "The DMV is to immediately afford the contractors all necessary and reasonable access to its files, computer data bases, personnel, et cetera, to give the contractors the maximum opportunity to swiftly and efficiently prepare a mailing data base."

The DMV prepared a proposed protective order, which limited access by Rust and Kinsella to the vehicle registration data base and prohibited direct access. Plaintiff objected to the proposed order and submitted its proposed version. The trial court issued a protective order, as drafted by plaintiff, which required DMV to provide ". . . all necessary and reasonable access to the [DMV's] files, computer data bases, personnel, etc., to allow [Kinsella and Rust] to perform their duties as Project Contractors. Unmonitored or unsupervised direct access to the data bases shall not be allowed." The trial court added, "The contractors['] activities shall not disrupt the core functions of the DMV."

The DMV contends that the appointment of the consultant/contractors was in excess of the court's jurisdiction: First, the trial court did not provide notice that the hearing was to hire contractors rather than appoint an expert; second, the order contains no limitations on the scope of the work or the scope of the expense and no determination was made as to which functions, if any, could be carried out by state employees. Finally, the DMV contends the hiring is an ". . . inappropriate intrusion by the judiciary into the executive branch of government in violation of Article III, section 3 of the California Constitution."

The DMV also contends it was not given an opportunity to oppose the appointment of the project contractors, that it was not informed of the trial court's decision to appoint project contractors on July 2, 1997, until it read

the tentative ruling that morning in court. DMV raises the question of compliance with the restrictions of Government Code section 19130, which governs state contracts for personal services by noncivil service personnel. Whether the Government Code applies and if so whether the appointment of the project contractors would meet such requirements, there is no indication in the record that the trial court considered these factors, as they were not raised sufficiently upon such short notice.

In its August 12, 1997, minute order, the trial court explained its rulings, pointing out that it had the responsibility to protect the rights of absent class members and the responsibility to ensure that the class receive the best practicable notice under the circumstances. The trial court stated that "[i]t is unheard of for a defendant in a class action to decide when, where, and in what manner, it will give notice . . ." and "it [is] clear to the Court that the DMV was stalling." The trial court asserted that no contract work had been done to date, only consultation, and therefore any ambiguity as to the DMV's waiver of notice was cured.

Evidence Code section 730 provides, in pertinent part: "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required. The court may fix the compensation for these services, if any, rendered by any person appointed under this section, in addition to any service as a witness, at the amount as seems reasonable to the court."

"The court appointed expert is expected to serve three purposes: to investigate the subject involved, to prepare and render a report as may be ordered by the court, and to give expert-opinion testimony at the trial." (2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 29.9, p. 1042.)

■ The trial court properly sought expert advice on the questions of class action management such as the efficient means to notify class members. Whether the trial court had authority to appoint contractors to conduct the various tasks involved in the identification and notification of class members is another question. Under class action rules, the trial court "may direct either party to notify each member of the class of the action." (Civ. Code, § 1781, subd. (d).)

To the extent that the appointment of the project contractors is consistent with the requirements of Evidence Code section 730, there was proper

notice. However, the deficiency in notice and the lack of opportunity to address the various issues related to the employment of persons to conduct the actual process of preparing and dispensing notices to the class members requires reconsideration of the issue upon remand.

The trial court is directed to identify those tasks performed by Rust and Kinsella consistent with their appointment pursuant to Evidence Code section 730 et seq. as the court's expert.[11] In addition, the trial court is to address the matter of appointment of project contractors anew. This is especially appropriate in light of the redefinition of the class as discussed above.

## DISPOSITION

The alternative writ is discharged. All stays are vacated. A writ of mandamus is hereby issued ordering the trial court to vacate its previous orders certifying the class and to issue new and different orders consistent with this opinion. Each party to bear its own costs.

Croskey, Acting P. J., and Kitching, J., concurred.

A petition for a rehearing was denied September 29, 1998, and the opinion was modified to read as printed above. Petitioner's application for review by the Supreme Court was denied November 18, 1998.

---

[11]By amicus curiae brief, Kinsella and Rust urge this court to take no action which would reverse the trial court's order retaining them and requiring the DMV to pay them its costs incurred prior to the August 21 stay order. The issue of the payment of the Rust/Kinsella statements is not subject to review by the petition. As determined above, the matter of their appointment must be reconsidered upon remand.