Filed 7/18/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| FRANCHISE TAX BOARD LIMITED LIABILITY CORPORATION TAX REFUND CASES | JCCP No. 4742<br><br>A140518<br><br>(City & County of San Francisco Super. Ct. No. CGC-07-462728)<br><br>(Fresno County Super. Ct. No. 10CECG00434) |

This coordinated litigation involves the remedies available to certain limited liability companies (LLCs) that paid a levy pursuant to section 17942 of the Revenue and Taxation Code which was later determined by this District to be unconstitutional. (See *Northwest Energetic Services, LLC v. California Franchise Tax Bd.* (2008) 159 Cal.App.4th 841 (*Northwest*); *Ventas Finance I, LLC v. Franchise Tax Bd.* (2008) 165 Cal.App.4th 1207 (*Ventas*).[1] After two separate actions seeking class treatment for the payment of refund claims were coordinated into this proceeding, the trial court addressed and rejected a jurisdictional argument from the Franchise Tax Board (FTB) that the LLCs had failed to adequately exhaust their administrative remedies as a class and thus could

---

[1] All statutory references are to the Revenue and Taxation Code unless otherwise indicated. All article references are to the California Constitution. Following this court's practice in both *Northwest* and *Ventas*, we refer to the liability set forth in section 17942 as "the levy." (See *Northwest*, *supra*, 159 Cal.App.4th at p. 849; *Ventas*, *supra*, 165 Cal.App.4th at pp. 1211-1212.)

1

not proceed on a classwide basis. The court, however, went on to deny the motion for class certification before it on multiple other grounds, including lack of ascertainability, numerosity, predominance, and superiority. While we agree with the trial court's exhaustion determination, we believe its class certification analysis was fundamentally flawed. Indeed, we deem this matter eminently suitable for treatment on a classwide basis and therefore reverse.

## I. BACKGROUND

Former section 17942 was enacted in 1994 as part of the Beverly-Killea Limited Liability Company Act (LLC Act), which authorized—for the first time—the formation, operation, and regulation of LLCs within California. (*Ventas*, *supra*, 165 Cal.App.4th at p. 1217; *Northwest*, *supra*, 159 Cal.App.4th at p. 852.) The LLC Act requires any LLC that does business in California, or even registers with the California Secretary of State, to pay both an annual minimum tax as set forth in section 17941 and a levy in accordance with section 17942. (§§ 17941, 17942.) Under subdivision (a) of former section 17942, the annual levy was equal to specified dollar amounts based on "the total income from all sources reportable to this state for the taxable year."[2] (Stats. 1996, ch. 952, § 19, p. 5390; Stats. 2002, ch. 664, § 203, p. 4008.)

In *Northwest*, *supra*, 159 Cal.App.4th 841, a Washington State LLC with locations in Washington and Oregon challenged the constitutionality of the levy. "Northwest had no operations, property, inventory, employees, agents, independent contractors or place of business in California. Nor did it solicit customers in California or make any deliveries to customers in California." (*Id.* at p. 849.) However, since Northwest had

---

[2] Specifically, since January 1, 2001, the levy has been $900 for LLCs with total income of $250,000 or more, but less than $500,000; $2,500 for LLCs with total income of $500,000 or more, but less than $1,000,000; $6,000 for LLCs with total income of $1,000,000 or more, but less than $5,000,000; and $11,790 for LLCs with total income of $5,000,000 or more. (§ 17942, subd. (a)(1)-(4); see also Stats. 2002, ch. 664, § 203, p. 4008; Stats. 2008, ch. 763, § 6, p. 5612.) As discussed further below, the Legislature amended section 17942 effective January 1, 2007, to, among other things, change the way total income is calculated for purposes of the levy. (Stats. 2007, ch. 381, §§ 2-4, pp. 2562-3564.) We are here concerned with the pre-2007 version of section 17942.

2

registered as an LLC with the California Secretary of State, it was subject to the levy pursuant to section 17941, subdivision (b), and former section 17942.  (*Id.* at pp. 849-850.)  Under these circumstances, Division Five of this District concluded that the levy "more closely resemble[d] a tax" than a fee, given its general revenue raising purpose.  (*Id.*  at pp. 852-861.)  It further determined that the levy—as applied to Northwest—violated the commerce clause of the United States Constitution (Commerce Clause) because it was not " 'fairly apportioned' " under the test set forth in *Complete Auto Transit, Inc. v. Brady* (1977) 430 U.S. 274, given that an LLC incurred the levy based on its total *worldwide* income merely by registering with the state, even if it did no business in California.  (*Northwest, supra,* 159 Cal.App.4th at pp. 862-864.)[3]  Northwest was thus entitled to a refund, and the FTB agreed that the refund in that particular case should be "the entire amount" of the LLC levy at issue.  (*Id.* at p. 868.)

*Northwest* was followed by *Ventas*, *supra*, 165 Cal.App.4th 1207, which concluded—in reliance on the analysis set forth in *Northwest*—that former section 17942 also violated the Commerce Clause as applied to Ventas Finance I (Ventas), a Delaware LLC, "to the extent that it fails to provide a method of fair apportionment."  (*Ventas*, *supra*, 165 Cal.App.4th at pp. 1213, 1222.)  Ventas differed from Northwest in that it actually conducted a portion of its business in California.  (*Ibid.*)  Under these circumstances, it could arguably have been required to pay a portion of the levy without running afoul of the Commerce Clause had former section 17942 included a method for fairly apportioning an LLC's levy obligation.  Thus, the novel issue in *Ventas* was the question of the appropriate remedy for LLCs that had operated both within and without California while being subjected to the unconstitutional levy.

The Legislature was aware of this issue and thus—while *Northwest* and *Ventas* were pending—it enacted Assembly Bill No. 198 (AB 198), which amended former section 17942 for taxable years beginning on or after January 1, 2007, and added section

---

[3] Because it held that the levy was unconstitutional as applied to Northwest, the court did not decide whether former section 17942 was unconstitutional on its face or whether it violated due process.  (*Northwest*, *supra*, 159 Cal.App.4th at p. 861.)

19394. (Stats. 2007, ch. 381, §§ 2-4, pp. 3562-3564.) The amendment to former section 17942 changed the language on which calculation of the levy was based from "total income from all sources reportable to this state" to "total income from all sources *derived from or attributable* to this state." (Stats. 2007, ch. 381, § 2, p. 3562, italics added; see *Ventas*, *supra*, 165 Cal.App.4th at pp. 1216-1217.) For levies assessed prior to January 1, 2007, section 19394 "specifies that if the levy under former section 17942 is 'finally adjudged' to be unconstitutional, the remedy shall be for the FTB to recompute it 'only to the extent necessary to remedy the discrimination or unfair apportionment,' and refund the difference." (*Ventas*, *supra,* 165 Cal.App.4th at p. 1216; see § 19394.) AB 198 further provides that section 19394 "shall apply to suits for refunds filed on or after the date of enactment of this act and suits for refunds filed before that date that are not final as of that date" and that any such refunds "shall be limited to the amount by which the fee paid, and any interest assessed thereon, exceeds the amount that would have been assessed" under newly amended section 17942. (Stats. 2007, ch. 381, § 4, p. 3564.)

Under these circumstances, the FTB argued in *Ventas* that "the court should either: (1) judicially reform former section 17942 to preserve it against constitutional invalidity and apply it as reformed to Ventas; or (2) limit the amount of the refund in [the] case to the difference between the amount Ventas actually paid and the amount Ventas could have been taxed without violating the Commerce Clause using a method of fair apportionment." (*Ventas*, *supra*, 165 Cal.App.4th at p. 1222.) The FTB further claimed that, in any event, this type of apportioned refund was now mandated by new section 19394. (*Ventas*, *supra*, 165 Cal.App.4th at p. 1222.) Ventas, in contrast, asserted that judicial reformation was not appropriate because it was inconsistent with the legislative intent at the time former section 17942 was enacted. (*Ventas, supra*, 165 Cal.App.4th at p. 1223.) Ventas further claimed that retroactive application of section 19394 violated due process and that, regardless, the changes effected by AB 198 constituted a new tax that had not been approved by a two-thirds vote and were therefore invalid. (*Ventas*, *supra*, 165 Cal.App.4th at p. 1223.) Ventas argued that the Commerce Clause violation at issue required refund of the entire amount paid. (*Id.* at pp. 1228-1229.)

4

The appellate court agreed with Ventas that judicial reformation was inappropriate on these facts. (*Ventas*, *supra*, 165 Cal.App.4th at pp. 1223-1226.) However, it further determined that a complete refund was not required under the specific circumstances of the case. Instead, the court concluded that an apportioned remedy for the Commerce Clause violation at issue was permissible "so long as the remedy it affords comports with federal due process." (*Id.* at pp. 1226-1233.) Applying this general rule to the case at hand, the court concluded: "Using FTB's measure of the refund does not create any procedural or practical burden for Ventas that would undermine the clarity or certainty of the remedy in a manner inconsistent with due process. The parties have already stipulated to Ventas's California apportionment percentage for each of the years in issue using California's apportionment methodology for corporations. Therefore, allowing the FTB to recalculate the levy for the years in issue will not require Ventas to bear any burden to prove the appropriate apportionment percentage, or to produce documentation in support of the calculation that it might not have retained." (*Id.* at pp. 1232-1233.) The court cautioned, however, that "[o]nly Ventas's refund claim is before us, and our holding is based upon the particular facts in this case. Accordingly, we express no general opinion regarding the appropriate remedy in other cases. Since we are concerned here only with Ventas's refund claim, the possibility that the remedy FTB proposes could impose an unreasonable burden on a hypothetical taxpayer whose California apportionment percentage is less readily ascertainable, does not preclude application of the remedy in this case, where it is stipulated." (*Id.* at p. 1233, fn. 20.) Moreover, given its disposition of the matter, the *Ventas* court declined to reach "any of the issues relat[ed] to the application of section 19394." (*Ventas*, *supra,* 165 Cal.App.4th at p. 1212, fn. 3.)

While *Northwest* and *Ventas* were pending—and the Legislature was taking its remedial action—the FTB also responded to the potential unconstitutionality of former section 17942. In July 2007, the FTB issued Public Service Bulletin 07-13-07, suggesting that LLCs might want to file protective claims for refund before the expiration of their statute of limitations periods given the pending litigation challenging the constitutionality of section 17942. (FTB, Public Service Bulletin 07-13-07: LLCs filing

5

protective claims–LLC fee (supersedes 3-21-2006) (July 13, 2007) at p. 1 (Bulletin 07-13-07).)  If an LLC wanted to file such a claim, the FTB required certain information, including identifying information for the LLC; a statement of the tax years involved; a "description of the issue (*stating that the LLC fee is unconstitutional is enough*);" and the amount of the claim, "which should match *the amount of the annual fee that the LLC paid.*" (*Ibid.*, italics added.)  After *Northwest* was final, the FTB issued a notice indicating that LLCs similar to Northwest should provide additional information—i.e., "[a] statement that the LLC did no business in California" for each of the taxable years in question—so that the FTB could process their claims for refund.  (FTB Notice 2008-2 (04-14-2008) (April 14, 2018) at p. 2.)  Similarly, after *Ventas* was final, the FTB issued a notice indicating it would process claims for LLCs like Ventas, with income within and outside of California, based on one of two apportionment methods and described the additional information which should be submitted so that any refunds due could be issued.  (FTB Notice 2009-04 (May 22, 2009) at pp. 1, 3-4.)  The FTB acknowledged that it remained to be determined whether any remedy was appropriate for LLCs that earned all of their income from activities in California.  (*Id.* at p. 2.)

In order to handle all of these anticipated LLC claims, the FTB formed the LLC Fee Protective Claims Project to receive, review, and process all claims related to the unconstitutionality of former section 17942 (Claims Project).  As part of the Claims Project, a database was created containing information taken from the claims, including identifying information, the date of the claim, the tax year involved, the claimant's source of income (whether within and/or outside of California), and any action taken on the claim (Claims Database).  Paper copies of the claims entered into the database were retained.  As of June 2009, 43,537 LLCs had filed claims, which the FTB then characterized as "Northwest (outside CA)," "Ventas (within/out CA)," or "Bakersfield (within CA)" claims.  Although designated as Bakersfield claims, this category apparently includes not only claimants with income solely within California, but also claimants that remained unclassified, even if they might possess claims similar to Northwest or Ventas.  None of the 38,952 Bakersfield claims had been processed as of

June 2009. Moreover, while the bulk of the Northwest claims had been processed, over 3,400 of the Ventas claims remained open as of that date.

It was against this statutory, administrative, and judicial landscape that Bakersfield Mall, LLC (Bakersfield) filed its class action complaint in April 2007 for a refund of all amounts paid pursuant to the levy for years 2000 through 2004. A first amended complaint was filed in September 2009. Bakersfield held title to a single property, a mall in Bakersfield, California. Its activities, however, were supported by personnel both inside and outside California, and it claimed it received some income from outside of California. Bakersfield had filed returns and paid the levy for each of 2000 through 2004. It had also filed claims for refund for the years in question, stating that the section 17942 levy was unconstitutional both on its face and as applied. Bakersfield's claims stated specifically that the levy discriminated against interstate commerce and violated state and federal due process and equal protection clauses as well as the Commerce Clause due to its lack of apportionment. The claims further state that the levy was "void in its entirety" and sought a "full refund of all amounts paid."[4]

In a similar fashion, Centerside II, LLC (Centerside) filed its class action complaint in February 2010—with a first amended complaint filed in March 2010— seeking a refund of all amounts paid pursuant to the levy for years 2000 through 2005. Centerside also held title to a single property, an office building in San Diego, California. It had filed returns and paid the levy for each of 2000 through 2005. Centerside filed claims for refund for 2000 through 2004 on grounds identical to Bakersfield. Its claim

---

[4] The trial court declined the FTB's request in this case that it take judicial notice of the claims filed with the FTB by Bakersfield and Centerside, stating that the claims are not "official records" of the FTB. We disagree and, on our own motion, judicially notice the claims pursuant to Evidence Code sections 459, subdivision (a) and 452, subdivision (c). (See *Fowler v. Howell* (1996) 42 Cal.App.4th 1746, 1750 [trial court permitted to take judicial notice of the records and files of a state administrative board pursuant to Evid. Code, § 452, subd. (c)]; see also *Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 374, fn. 4 [citing *Fowler* and noting that Evid. Code, §§ 452 and 459 "have been read to allow judicial notice of administrative agency records"].)

for 2005 sought a full refund of its levy payment on the grounds that the levy had been determined to be unconstitutional in *Northwest*.

The FTB demurred to the first amended complaints in both the Bakersfield and the Centerside litigation, arguing that the courts were without jurisdiction to proceed with the cases as class actions, since no class claims for refund had been filed as required by section 19322. However, both trial courts overruled their respective demurrers, and the FTB's subsequent writ petitions were denied both by this court and by the Fifth District. The FTB later filed an additional motion—making the same argument based on new case authority—which was similarly denied by the Centerside trial court. Again, the corresponding writ petition was summarily denied by the Fifth District. The FTB next sought to coordinate the two proceedings, which eventually occurred in early 2013.

Thereafter, on May 1, 2013, Bakersfield and Centerside (collectively, plaintiffs) filed their joint motion for class certification in this coordinated proceeding. Plaintiffs sought an order certifying a class consisting of "those LLCs that earned some or all of their income from business operations inside California, timely filed claims for refund of the taxes unconstitutionally collected pursuant to Section 17942, have not received full refunds, and had open claims at the time at least one of the complaints in these coordinated cases was filed." Plaintiffs argued that their suggested class was easily ascertainable and clearly numerous, given the existence of the FTB's Claims Database cataloguing over 43,000 individual claimants, the vast majority of whom had yet to be processed by the FTB. Plaintiffs also maintained that the legality and constitutionality of former section 17942 and the partial refund procedure adopted by AB 198 represented predominant common questions for purposes of class certification, and that they could adequately represent the class. Finally, plaintiffs claimed that a class action was superior to other forms of relief because individual actions would likely be economically unfeasible given the relatively small losses of each claimant; the court could channel any necessary individual determinations through existing administrative forums; and declaratory relief alone was insufficient.

8

After opposition from the FTB and a hearing on the matter, the trial court denied the plaintiffs' certification motion. Although it concluded that a class action based on the aggregation of individual claimants was possible, it determined that plaintiffs had failed to demonstrate many of the necessary elements required for certification of a class, including ascertainability, numerosity, predominance, and superiority. Plaintiffs timely filed a notice of appeal, and the matter is now before this court for resolution.

## II. DISCUSSION

**A.** *Jurisdictional Challenge*

As a preliminary matter, we must consider the FTB's strenuous assertion that there is no jurisdiction to proceed with this case as a class action because the putative class members did not exhaust their administrative remedies by filing class claims for refund as mandated by section 19322 prior to filing suit. (See *JPMorgan Chase Bank, N.A. v. City and County of San Francisco* (2009) 174 Cal.App.4th 1201, 1212; *Shiseido Cosmetics (America) Ltd. v. Franchise Tax Bd.* (1991) 235 Cal.App.3d 478, 487-491.) Section 19322 states that "[e]very claim for refund shall be in writing, shall be signed by the taxpayer or the taxpayer's authorized representative, and shall state the specific grounds upon which it is founded." The statute further provides that a "*claim filed for or on behalf of a class of taxpayers*" must: (a) "[b]e accompanied by written authorization from each taxpayer sought to be included in the class"; (b) "[b]e signed by each taxpayer or taxpayer's authorized representative"; and (c) "[s]tate the specific grounds on which the claim is founded." (§ 19322, italics added.)[5] It is undisputed that the LLCs in this action did not file class claims for refund as authorized by section 19322. Rather, as stated above, the proposed classes in the present action—by definition—include only those LLCs that filed *individual* claims for refund pursuant to 19322 in certain specified timeframes.

---

[5] Section 19322 applies to, among other things, refunds for the "overpayment of any liability imposed under Part 10 (commencing with Section 17001)" of the Revenue and Taxation Code (§ 19301, subd. (a)), which includes the levy here paid by the LLCs.

9

According to the FTB, the aggregation of individual LLC claimants as a class is impermissible under section 19322 and article XIII, section 32. Specifically, the FTB asserts that a class action can only be pursued in this context in accordance with section 19322's class claim requirements, under which all class members must have consented to representation. We disagree. And, indeed—while we have reviewed the question independently (see *Alameda County Deputy Sheriff's Assn. v. Alameda County Employees' Retirement Assn.* (2018) 19 Cal.App.5th 61, 89 [questions of constitutional and statutory construction subject to de novo review])—we note that our determination follows the lead of the four different trial court judges who considered and rejected the FTB's position below.

It is true that article XIII, section 32 limits the manner in which taxpayers may seek a refund of taxes from a taxing entity, providing: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, *in such manner as may be provided by the Legislature.*" (Italics added.) Our high court has indicated that "[t]his constitutional limitation rests on the premise that strict legislative control over the manner in which tax refunds may be sought is necessary so that governmental entities may engage in fiscal planning based on expected tax revenues." (*Woosley v. State of California* (1992) 3 Cal.4th 758, 789 (*Woosley*).) And, in fact, "the United States Supreme Court has held that a state may, consistent with constitutional demands, ensure its 'exceedingly strong interest in financial stability' by enacting a variety of procedural protections, among which are 'timely notice of complaint' provisions and 'relatively short statutes of limitations.'" (*Farrar v. Franchise Tax Bd.* (1993) 15 Cal.App.4th 10, 21 (*Farrar*), quoting *McKesson Corp. v. Florida Alcohol & Tobacco Div.* (1990) 496 U.S. 18, 37, 45.) As a consequence, a taxpayer must strictly comply with the administrative procedures prescribed by the Legislature in order to maintain an action for refund. (*Woosley, supra,* 3 Cal.4th at p. 792 [article XIII, section 32 "precludes this court from expanding the methods for seeking tax refunds expressly provided by the

10

Legislature"]; *Kuykendall v. State Bd. of Equalization* (1994) 22 Cal.App.4th 1194, 1203 [" 'statutes governing administrative tax refund procedures, backed as they are by a plenary constitutional authority, are to be strictly enforced' "]; see also *Pacific Gas & Electric Co. v. State Bd. of Equalization* (1980) 27 Cal.3d 277, 284 [article XIII, section 32 "means what it says"]; *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1092 [consumer remedies unavailable for dispute involving the sales taxability of hot coffee to go because such an action was not authorized under the tax code]; *Sprint Telephony PCS, L.P. v. Board of Equalization* (2015) 238 Cal.App.4th 871, 877 [judicial action by telephone company seeking tax refund barred for failure to comply with technical requirements of claims statute, even where such requirements were viewed as serving "limited practical purposes"].)

In *Woosley*, *supra*, 3 Cal.4th 758, the Supreme Court considered at length the availability of class relief in the tax refund context in light of article XIII, section 32. *Woosley* involved a challenge to the imposition of certain license fees and use taxes by the Department of Motor Vehicles (DMV). (*Woosley*, *supra,* 3 Cal.4th at p. 765.) After filing, without success, an administrative claim on behalf of "himself and all others similarly situated," Woosley commenced a class action for refund. (*Id.* at p. 767.) The Supreme Court first concluded that the vehicle license fees and use taxes at issue did, in fact, violate the commerce clause and that refunds were therefore appropriate. (*Id.* at pp. 777-783.) It then turned to the issue of whether the class claim filed by Woosley was authorized by statute. (*Id.* at pp. 788-795.)

Since the DMV vehicle license fees and use taxes fell within the ambit of article XIII, section 32, the court looked at the procedures provided by the Legislature for seeking refunds of each. (*Woosley*, *supra*, 3 Cal.4th at pp. 789-792.) With respect to the vehicle license fees, the court determined that class claims for refund were not authorized because the Legislature had required that a claim for the refund of such fees "be filed by '*the person* who has paid the erroneous or excessive fee or penalty' " or by his or her "agent"; the term "person" did not include a class; and "a class representative who files a claim on behalf of all others similarly situated, without the knowledge or consent of such

11

other persons, is not the agent of the members of the class." (*Woosley*, *supra*, 3 Cal.4th at pp. 789-790.)  The court came to a similar conclusion with respect to the DMV use tax, albeit on different grounds.  (*Id.* at pp. 790-792.)  Because its use tax analysis is highly relevant to the instant case, we set it out in some detail.

The Supreme Court noted that "[w]hen Woosley filed his claim in 1977, section 6904 read:  'Every claim shall be in writing and shall state the specific grounds upon which the claim is founded.' " (*Woosley*, *supra*, 3 Cal.4th at p. 791.)  However, "[i]n 1987, approximately 10 years after Woosley filed his claim, the Legislature amended section 6904 to add the following language as subdivision (b):  'A claim filed for or on behalf of a class of taxpayers shall do all of the following:  [¶]  (1) Be accompanied by written authorization from each taxpayer sought to be included in the class.  [¶]  (2) Be signed by each taxpayer or taxpayer's authorized representative.  [¶] (3) State the specific grounds on which the claim is founded.' " (*Woosley*, *supra*, 3 Cal.4th at p. 791.)  Referencing the relevant legislative history, the court opined that "[t]he purpose of this amendment to section 6904, governing claims for refunds of sales and use taxes, was to extend to class claims against the [State Board of Equalization] the 'written authorization requirements' imposed the year before on class claims for refunds filed with the Franchise Tax Board.  [Citation.]  In 1986, the Legislature had amended section 19055, governing claims for refunds of personal income taxes, and section 26074, governing claims for refunds of bank and corporate taxes [both predecessor statutes to section 19322], to add language nearly identical to that later added to section 6904.  Both the 1987 amendment to section 6904 and the 1986 amendments to sections 19055 and 26074 were intended to spare the state the substantial administrative costs associated with identifying and notifying class members once a case had been certified as a class action." (*Woosley, supra*, 3 Cal.4th at p. 791.)

On this basis, the high court concluded that "prior to the 1986 and 1987 amendments, class claims seeking tax refunds were not statutorily authorized." (*Woosley*, *supra*, 3 Cal.4th at p. 792.)  The court additionally opined that while the "statute as amended in 1987 expressly permits, for the first time, the filing of a class

12

claim," it also "requires that each member of the class authorize his or her inclusion in the class and that each member of the class, or the class member's authorized representative, sign the claim." (*Id.* at p. 791.) Thus, according to *Woosley*, "[a] class claim for refund of sales and use taxes may not be submitted . . . without the knowledge and express consent of each member of the class." (*Ibid.*)

The next year, in *Farrar*, *supra,* 15 Cal.App.4th 10, we relied on *Woosley*'s reasoning to affirm an order refusing to certify a class action seeking tax refunds pursuant to section 19055 (as stated above, a predecessor to section 19322). (*Farrar*, *supra,* 15 Cal.App.4th at pp. 14-21.) The Farrars had purported to file the underlying claim as "class representative for all persons" who had paid the disputed tax. (*Id.* at p. 15.) However, it was not until after they had commenced a class action on that class claim that any attempt was made to supplement it with written authorizations from other taxpayers as mandated by section 19055. (*Farrar*, *supra,* 15 Cal.App.4th at pp. 14-15.) Noting that the "common law features of class action administration" remained essentially equitable in nature, despite their "limited codification" in Code of Civil Procedure section 382, we determined that they were "subject to legislative displacement." (*Farrar*, *supra,* 15 Cal.App.4th at p. 17.) Thus, since the Farrars had failed to comply with the plain language of section 19055, the "inescapable consequence" was that both their administrative claim and their refund action were "valid only as to them in their individual capacities." (*Farrar*, *supra,* 15 Cal.App.4th at pp. 21-22; see also *Neecke v. City of Mill Valley* (1995) 39 Cal.App.4th 946, 949, 951, 962 (*Neecke*) [upholding denial of certification where class claim for local tax refund on behalf of all "others similarly situated" was not authorized by sections 5097 and 5140].)

Unsurprisingly, the FTB cites both *Woosley* and *Farrar* in support of its contention that a section 19322 class claim was required—with its attendant authorizations—to maintain the present proceedings as a class action. Indeed, it finds this court's decision in *Farrar* to be "precisely on point in this case." However, while the FTB's position is perhaps superficially plausible, when both *Woosley* and *Farrar* are considered in their particular contexts, it becomes clear that the agency has

13

fundamentally misapprehended this controlling precedent. In short, both *Woosley* and *Farrar* involved situations in which an administrative class claim was purported to have been brought on behalf of taxpayers whose identities had not been specified and whose individual claims had not been exhausted. (See *Woosley*, *supra*, 3 Cal.4th at p. 767 [claim brought on behalf of "himself and all others similarly situated"]; *Farrar*, *supra*, 15 Cal.App.4th at p. 15 [attempt to file claim as "class representative for all persons" who had paid the disputed tax].) Here, in contrast, all potential class members have identified themselves to the FTB and have exhausted their administrative remedies by filing *individual* claims. *Woosley*, itself, expressly acknowledges this distinction, stating: "[W]e hold that the class claim filed in the present case was not authorized by the statutes governing claims for refunds of vehicle license fees and use taxes. Accordingly, that claim is valid only as to Woosley in his individual capacity, and *the class in the present class action properly may include only persons who timely filed valid claims for refunds*." (*Woosley*, *supra,* 3 Cal.4th at p. 788, italics added; see also *id*. at p. 795 [trial court directed on remand "to delete from the class those persons who have not timely filed a valid claim for a refund"]; cf. *Thomas v. City of East Palo Alto* (1997) 53 Cal.App.4th 1084, 1095 (*Thomas*) [upholding certification of class action for refund of local property taxes where all of the individual taxpayers had filed separate claims for refund, citing *Farrar, Woosley*, and *Neecke*].)

Moreover, following remand of *Woosley*, the Second District Court of Appeal addressed and rejected an argument similar to the FTB's in *State of California ex rel. Dept. of Motor Vehicles v. Superior Court* (1998) 66 Cal.App.4th 421 (*DMV*). In that matter, the DMV filed a writ petition complaining that the trial court had erred by including individuals who had not filed timely claims and who had not consented to representation within it certified class of persons entitled to vehicle license fee refunds. (*Id.* at p. 424.) The appellate court agreed that *Woosley* made clear that the class on remand should be limited to persons who had filed timely claims for refund: "Each [class member] must demonstrate both the filing of a timely valid claim within the period provided by the claims statute and the rejection of that claim within the statute of

14

limitations for bringing a subsequent action." (*DMV, supra,* 66 Cal.App.4th at p. 434.) This was viewed as a "prerequisite to legal action." (*Id.* at p. 434, fn. omitted.) The court went on, however, to take issue with the DMV's argument that the statutory limitations on *class claims* should limit the composition of the resulting aggregated *class action*, a contention it characterized as a misreading of *Woosley*. (*DMV, supra,* 66 Cal.App.4th at p. 433.) Noting that neither *Farrar* nor *Neecke* addressed the requirements of class actions on behalf of taxpayers who had filed *individual* claims, the court concluded that, generally speaking, "[t]here is no requirement that persons identified as class members in a class action provide their consent to representation prior to certification of a class. Once the class is certified and class members notified, due process will be served by the opportunity of any notified class member to opt out." (*DMV, supra,* 66 Cal.App.4th at 433.) Thus, the FTB's arguments to the contrary notwithstanding, there is nothing in either *Woosley* or *Farrar* that bars the instant action from proceeding on a classwide basis, and *Woosley*, in fact, appears to support such an approach. [6]

---

[6] The FTB's argument that *Woosley*'s holding is only applicable to vehicle license fees—which they claim are analytically distinct from the LLC levy in this case—is not well taken. *Woosley*'s discussion of the permissible class clearly includes both individual license fee and use tax claimants. (*Woosley*, *supra*, 3 Cal.4th at pp. 774, 788, 795 [class certified in trial court included both license fee and use tax claimants; class as modified by the Supreme Court includes claimants who paid "higher fees and taxes"].) Indeed, *DMV* indicates that the *Woosley* class was modified on remand to exclude use tax claimants solely because the plaintiffs had failed to prove numerosity with respect to those claimants. (*DMV*, *supra*, 66 Cal.App.4th at p. 429, 432.)

Equally misplaced is the FTB's additional suggestion that numerosity could not be established on remand with respect to the use tax claims discussed in *Woosley* because only *class* claims could be aggregated and included in the class as "valid" claims. The *Woosley* Court removed approximately 14 million potential claimants from the use tax class because their claims related to a period after November 1976, when the use tax issue was corrected. (*Woosley*, *supra*, 3 Cal.4th at pp. 774, 783-787, 795.) The Supreme Court also removed from the remaining class of approximately 2.8 million use tax *and* vehicle license fee claimants those individuals who, prior to the 1976 change, paid use taxes on out-of-state purchases from a manufacturer or a dealer, leaving only private purchases made outside of California as potential candidates for use tax class treatment. (*Id.* at pp. 772-773, 795.) It seems likely that it was these changes, along with the failure

15

Of course, in directing that individual claims for tax refund could be aggregated for purposes of a class action, the *Woolsey* court was dealing with a statute that had not yet been amended to expressly allow for class claims. (*Woolsey*, *supra*, 3 Cal.4th at p. 791.) Thus, the subsequent amendment of the refund statutes at issue in both *Woosley* and in this case to allow for *class claims* under specified circumstances could be read as precluding the filing of tax refund *class actions* under any other mechanism. We see no reason, however, why it should.

Rather, our conclusion—that there is no bar to certification of a class action for refund of unconstitutional taxes so long as all class members have filed their own individual claims and thereby exhausted their administrative remedies—is consistent with the underlying purpose of both section 6904 and section 19322. As stated above, the *Woosley* court opined that the amendments to both section 6904 and the predecessor statutes to section 19322 to allow for class claims "were intended to spare the state the substantial administrative costs associated with identifying and notifying class members once a case had been certified as a class action." (*Woosley, supra*, 3 Cal.4th at p. 791.) Moreover this District has elaborated with respect to section 19322 that the Legislature's intent in imposing administrative exhaustion requirements was " 'to ensure that the [FTB] receives sufficient notice of the claim and its basis. [Citation.] The [FTB] then has an opportunity to correct any mistakes, thereby conserving judicial resources. [Citation.]' [Citation.] Section 19322 'requires no particular form; the claim only must be in writing and state the grounds therefor. Indeed, the purpose of the statute is to put the board on notice of a claim . . . .' [Citation.]" (*J. H. McKnight Ranch, Inc. v. Franchise Tax Bd.* (2003) 110 Cal.App.4th 978, 986, fn. omitted (*J. H. McKnight*).)

---

of sufficient persons to file *individual* use tax claims for the pre-1976 period, which defeated numerosity as described in *DMV*. (*DMV*, *supra*, 66 Cal.App.4th at p. 429.) Indeed, a class claims procedure was not even authorized for use taxes until 1986, so the only "valid" claims for the pre-1976 period would have been individual claims. (See *Woosley*, *supra*, 3 Cal.4th at p. 791.)

In *J. H. McKnight*, the FTB had actual notice of the basis of a taxpayer's claim, even though it was not expressly stated in the taxpayer's written claim for refund. (*J. H. McKnight*, *supra*, 110 Cal.App.4th at pp. 985-987.) In rejecting the FTB's argument that the trial court consequently lacked jurisdiction to order a refund on that basis, the reviewing court stated: "If the [FTB] has notice of the taxpayer's argument *from whatever source* during the course of resolving the claim for refund, it has the opportunity to reevaluate its position, reach the correct result, and obviate the need for a subsequent lawsuit. We see no basis for construing the statutes setting out the administrative exhaustion requirement so as to ignore actual notice the [FTB] may have had from sources other than the four corners of the initial claim." (*Id.* at pp. 986-987.) Analogously, here, although no class claim was filed, the FTB has actual notice—from its own records—of the identities of the thousands of individual taxpayers who have exhausted their administrative remedies by filing individual claims and the bases for those claims. Under such circumstances, no purpose would be served by erecting a jurisdictional barrier to class treatment of those claims on the formalistic ground that no class claim for refund was filed.

In sum, we conclude that nothing precludes a class action aggregating LLC claimants in this case who have each filed their own individual claims for refund, thereby individually exhausting their own administrative remedies. (See also *Thomas*, *supra*, 53 Cal.App.4th at p. 1095 ["a class action is . . . proper to determine the validity of the separate fully exhausted administrative claims of the plaintiff taxpayers"].)[7] The trial

---

[7] In making this determination, we are aware that our December 2007 order summarily denying the FTB's previous writ petition on this issue might be read as supporting the argument that a class claim is a jurisdictional prerequisite to a class action in this context. We believe, however, that our comments made in connection with this summary denial can be read narrowly as supporting the notion that a class claim is required where individual claimants have not been previously identified, as was the case in *Farrar*. (See *Farrar*, *supra*, 15 Cal.App.4th 10, 15 [class action on behalf of the Farrars and " 'all others similarly situated' " cannot proceed due to noncompliance with the class claim procedure set forth in section 19055].) Regardless, to the extent our comments were contrary to our current understanding of this matter, they are nonbinding. (See *Lomes v.*

17

court, however, concluded that, while a class action *could* be certified in this matter, it *should not be* under the particular circumstances presented. We thus turn next to this question.

**B.     *Denial of Class Certification***

We recently had occasion to summarize the requirements for class certification pursuant to Code of Civil Procedure section 382, as well as the standards for our review of a certification order, as follows: " 'Originally creatures of equity, class actions have been statutorily embraced by the Legislature whenever "the question [in a case] is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." [Citations.] Drawing on the language of Code of Civil Procedure section 382 and federal precedent, we have articulated clear requirements for the certification of a class. The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives. [Citations.] "In turn, the 'community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' " ' " (*ABM Industries Overtime Cases* (2017) 19 Cal.App.5th 277, 299 (*ABM*).)

" ' "This state has a public policy which encourages the use of the class action device." ' [Citation.] Further, whether class certification should be granted is a procedural question, and not a question of whether the action is ' "legally or factually meritorious." ' [Citation.] And, as a general matter, ' "a class action is not inappropriate simply because each member of the class may at some point be required to make an

_____

*Hartford Financial Services Group, Inc.* (2001) 88 Cal.App.4th 127, 132, fn. 2 ["[s]ummary denial of a writ petition without a written opinion is not law of the case or res judicata"]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2017) ¶ 15:241.5, p. 15-142 [same result even if summary denial is accompanied by a statement of reasons or legal citations].)

individual showing as to his or her eligibility for recovery or as to the amount of his or her damages." ' [Citation.]" (*ABM, supra*, 19 Cal.App.5th at p. 299.)

Finally, "[a] ruling on class certification is reviewed for abuse of discretion. [Citations.] Under this standard, ' "[a] certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions." ' [Citations.] Moreover, '[a]n appeal from an order denying class certification presents an exception to customary appellate practice by which we review only the trial court's ruling, not its rationale. If the trial court failed to conduct the correct legal analysis in deciding not to certify a class action, " 'an appellate court is required to reverse an order denying class certification . . . , "even though there may be substantial evidence to support the court's order." ' " [Citation.] In short, we must " 'consider only the reasons cited by the trial court for the denial, and ignore other reasons that might support denial.' " ' [Citation.]" (*ABM, supra*, 19 Cal.App.5th at p. 301.) In the present case, the trial court cited multiple reasons for its denial of class certification. However, upon review, all of the reasons proffered rest on erroneous legal assumptions and/or improper criteria and must therefore be rejected.

1. *Ascertainability and Numerosity*

First, with respect to the existence of an ascertainable and numerous class, the trial court had difficulty with the class definitions, which it found unclear because it appeared that "one of them (*Bakersfield*) is comprehended by the other (*Centerside*)." In addition, noting that the plaintiffs could not legally raise arguments that had not been included in the underlying LLC claims (§ 19382), the trial court expressed concern that it could not know the basis for all of the many individual claims or whether individual claimants had " 'deemed' " their claims denied for purposes of inclusion in the class. The trial court also took issue with reliance on the Claims Database as a means of ascertaining the class, as it was subject to data entry errors and could include individual claimants with invalid claims. Thus, even if plaintiffs prevailed on the merits, it might be true that not every LLC in the Claims Database would be entitled to a refund. Finally, the trial court opined

19

that the claims of the *Ventas* claimants may have been mooted by the FTB's payment to them of apportioned refunds, thereby negatively impacting numerosity.

Based on all of these concerns, the trial court believed that it was simply unable to ascertain the members of the proposed class or determine numerosity. We disagree. Indeed, we believe that the trial court's analysis fundamentally misapprehends both plaintiffs' underlying theory of recovery and the legal requirements for establishing an ascertainable class.

"Ascertainability is achieved 'by defining the class in terms of objective characteristics and common transactional facts making the ultimate identification of class members possible when that identification becomes necessary.' " (*Bomersheim v. Los Angeles Gay & Lesbian Center* (2010) 184 Cal.App.4th 1471, 1483; see *Nicodemus v. Saint Francis Memorial Hospital* (2016) 3 Cal.App.5th 1200, 1212 (*Nicodemus*); *Aguirre v. Amscan Holdings, Inc.* (2015) 234 Cal.App.4th 1290, 1300 (*Aguirre*).) "In determining whether a class is ascertainable, the trial court examines the class definition, the size of the class and *the means of identifying class members*." (*Bufil v. Dollar Financial Group, Inc.* (2008) 162 Cal.App.4th 1193, 1207, italics added.) Thus, a plaintiff is not required to establish the identity of class members at the class certification stage of the proceedings. (*Reyes v. Board of Supervisors* (1987) 196 Cal.App.3d 1263, 1274.) Moreover, "[w]hile often it is said that '[c]lass members are "ascertainable" where they may be readily identified without unreasonable expense or time by reference to official records' [citations], that statement must be considered in light of the purpose of the ascertainability requirement." (*Medrazo v. Honda of North Hollywood* (2008) 166 Cal.App.4th 89, 101 (*Medrazo*).) " 'Ascertainability is required in order to give notice to putative class members as to whom the judgment in the action will be res judicata.' " (*Aguirre, supra*, 234 Cal.App.4th at p. 1300.) Therefore, "[t]he goal in defining an ascertainable class 'is to use terminology that will convey "sufficient meaning to enable persons hearing it to determine whether they are members of the class plaintiffs wish to represent." [Citation.] . . . "Otherwise, it is not possible to give adequate notice to class members or to determine after the litigation has concluded who is barred from

20

relitigating." ' " (*Id.* at pp. 1300-1301; see also *Medrazo*, *supra,* 166 Cal.App.4th at p. 101 [ascertainability requirement is satisfied if "the potential class members may be identified without unreasonable expense or time and given notice of the litigation, and the proposed class definition offers an objective means of identifying those persons who will be bound by the results of the litigation"].) "In sum, a class is ascertainable if a plaintiff supplies a reasonable means of identifying potential class members and the class is defined in terms of objective characteristics and common transactional facts sufficient to allow a class member to identify himself or herself as having a right to recover based on that description." (*ABM*, *supra*, 19 Cal.App.5th at p. 303.)

Here, in its first amended complaint filed on September 8, 2009, Bakersfield identified its proposed class as including "all LLCs that have derived their income from business operations in state and that have filed timely claims for a tax refund of the Levy and have had their claim for a refund deemed denied or denied (and the period for filing a lawsuit under Rev. & Tax. Code § 19382 remains open)." The class definition in its original complaint filed on April 25, 2007 was similar, but included only those LLCs that had "derived their income *exclusively* from business operations in state." (Italics added.) Similarly, Centerside defined its proposed class in its February 4, 2010 complaint as including "all LLCs that have derived their income from business operations solely within California or within and without California and that have filed timely claims for a tax refund of the Tax and have had their claim for a refund deemed denied or denied (and the period for filing a lawsuit under Rev. & Tax. Code § 19382 remains open)." Centerside's first amended complaint did not alter this proposed definition. Thus, as summarized in plaintiffs' certification motion, the class, if certified as requested, would consist of all LLCs that filed a timely refund claim, did not conduct all of their business outside of California, have not received the refund they requested, and whose period for filing a tax refund action was not closed when the relevant complaints were filed.

Demonstrably, then, plaintiffs have proposed class definitions using objective characteristics and common transactional facts sufficient to allow potential class members to identify themselves as having a right to recover. All LLCs notified of the

pendency of the class action should know, or easily be able to determine, whether they: (1) filed a timely refund claim; (2) conducted at least some business in California; (3) did not receive a full refund; and (4) could have filed a timely refund action as of the operative dates listed. While the trial court expressed concern that the Bakersfield class was not needed, as it was a subset of the Centerside class, it appears at least theoretically possible that the Bakersfield class could include members excluded from Centerside's class definition. For example, an LLC that filed a claim which was denied by the FTB ten days before the filing of the Bakersfield action might be a member of the Bakersfield class, but not the Centerside class. (See § 19384.) It is true, as stated above, that the vast majority of the claims at issue (those dubbed Bakersfield claims) remained open as of September 2009, and thus overlap between the two classes is likely. However, where both proposed classes are clear, we do not believe even significant overlap is fatal under an ascertainability analysis. Nor do we think combining the two classes is essential to a finding of ascertainability in this case. The trial court, however, was and is free to modify the class definitions if it believes a single class would be more concise and clear. (Cf. *Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 916 ["if necessary to preserve the case as a class action, the court itself can and should redefine the class where the evidence before it shows such a redefined class would be ascertainable" (fn. omitted)].)

Further, plaintiffs have supplied a reasonable means for identifying all potential class members by reference to the Claims Database and the underlying claims records possessed by the FTB. The Claims Database is certainly not underinclusive as, by definition, any class in this matter is limited to LLCs that filed refund claims. Thus, all potential class members can be notified and an objective means exists for identifying those persons who will be bound by the results of the litigation.[8] (See *Medrazo*, *supra*,

---

[8] The FTB argued below, and continues to assert on appeal, that the potential class members in this action cannot be identified through its records because it is statutorily prohibited from disclosing any taxpayer information. (§ 19542.) The trial court, however, did not cite this as a reason for its denial of class certification and thus we do

166 Cal.App.4th at p. 101.)  Moreover, the trial court's concerns regarding the potential overbreadth of the Claims Database—due to erroneous data entry, invalid claims, or claims based on grounds other than the unconstitutionality of section 17942—go to the merits of each class member's recovery and are therefore not an appropriate focus for the ascertainability inquiry.  (See *Save-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 333 [" 'a class action is not inappropriate simply because each member of the class may at some point be required to make an individual showing as to his or her eligibility for recovery' "]; *Nicodemus*, *supra*, 3 Cal.App.5th at p. 1216 [where potential class members may readily be identified through existing database, " 'speculation' " that the data set might be overinclusive went "to the merits of each class member's recovery" and thus " '[was] an inappropriate focus for the ascertainability inquiry' "]; see also *ABM*, *supra*, 19 Cal.App.5th at pp. 302-307 [same; discussing cases].)

Moreover, where, as here, the FTB in Bulletin 07-13-07:  suggested to LLCs that they file protective claims given the pending litigation regarding the constitutionality of former section 17942; informed potential claimants that stating the levy was unconstitutional was "enough" for purposes of such a claim; instructed claimants that the amount of the claim should match the amount of the levy paid; and developed the Claims Database precisely to catalogue and address every refund claim related to the unconstitutionality of the levy statute that it received, it seems reasonable to infer that the vast majority of the LLC claimants in the Claims Database did what they were instructed to do and filed claims for full refund based upon the unconstitutionality of the statute. Under these circumstances, it appears unlikely that large numbers of claimants would be found ineligible for a refund should plaintiffs prevail under their theory of recovery—that class members are entitled to a full refund of all levy monies paid.  However, should it be determined later in the litigation that the Claims Database includes claimants that, for

_____

not consider it here, except to note that any necessary confidentiality protections can likely be instituted in the trial court on remand.  (See, e.g., *Los Angeles Gay & Lesbian Center v. Superior Court* (2011) 194 Cal.App.4th 288, 305-306 (*Gay & Lesbian Center*); *DMV*, *supra*, 66 Cal.App.4th at p. 438-441.)

23

whatever reason, are not eligible for recovery, those LLCs can be eliminated from the class at that time.  (See *Nicodemus*, *supra*, 3 Cal.App.5th at p. 1214; *Aguiar v. Cintas Corp. No. 2* (2006) 144 Cal.App.4th 121, 136.)

Moreover, the proposed classes do not fail the ascertainability test merely because they could possibly include LLCs that may not wish to have their claims "deemed denied" for purposes of court action.  Section 19385 provides in relevant part:  "If the Franchise Tax Board fails to mail notice of action on any refund claim within six months after the claim was filed, the taxpayer may, prior to mailing of notice of action on the refund claim, consider the claim disallowed and bring an action against the Franchise Tax Board on the grounds set forth in the claim for the recovery of the whole or any part of the amount claimed as an overpayment."  The FTB suggested below that some LLCs might not want to subject themselves to a court action as such litigation could "open up all issues" in their returns.  The trial court concluded that, while any such LLCs could opt out if they wished to avoid the suit, it could not determine ascertainability or numerosity without first hearing from all of the individual LLCs on this issue.  This was error.  First, we believe the FTB's Pandora's box concerns are likely exaggerated, given the relatively straightforward nature of the LLC returns at issue and the remedy here sought—total refund, which would require nothing more than ascertaining the amount paid and reimbursing it.  Further, section 19385's exhaustion requirement allows individual claimants to proceed to court after six months if the FTB has taken no action on their claims, and thus, all such claimants are potentially eligible for inclusion in the class.  Under these circumstances, the usual opt-out procedure for class actions pursuant to Code of Civil Procedure section 382 seems entirely adequate to handle any LLCs who would like to be excluded from the class.  (See *Hypertouch, Inc. v. Superior Court* (2005) 128 Cal.App.4th 1527, 1543-1550 [opt-in procedure not authorized and conflicts with California class action rules]; see also *Gay & Lesbian Center*, *supra*, 194 Cal.App.4th at pp. 301-306 [same].)  While the FTB cites to our previous summary denial of its writ petition in this matter for the proposition that "taxpayer class actions are handled in a restricted 'opt-in' fashion," this discussion referenced the requirements for a *class claim*

24

for refund—a procedural mechanism that, as we have repeatedly stressed, is inapplicable to this proceeding brought under Code of Civil Procedure section 382. (See *DMV*, *supra*, 66 Cal.App.4th at p. 437 [noting that, since the action did not involve a class claim, class members will have the opportunity to opt out "as in the typical class action situation"].) In sum, none of the trial court's concerns defeat ascertainability in this case.

Finally, with respect to numerosity, as the trial court recognized, "[t]o be certified, a class must be 'numerous' in size such that 'it is impracticable to bring them all before the court . . . .'" (*Hendershot v. Ready to Roll Transportation, Inc.* (2014) 228 Cal.App.4th 1213, 1222 (*Hendershot*), quoting Code Civ. Proc., § 382; see also *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 (*Linder*) [a class suit is appropriate " 'when numerous parties suffer injury of insufficient size to warrant individual action and when denial of class relief would result in unjust advantage to the wrongdoer' "].) The proposed classes in this case, numbering in the tens of thousands, clearly meet this standard. (See *Hendershot*, *supra,* 228 Cal.App.4th at pp. 1222-1223 [requirement that there be " 'many' parties" to a class action is liberally construed; Supreme Court has upheld a class of 10 beneficiaries to a trust; ultimate issue in evaluating numerosity is " 'whether the class is too large to make joinder practicable' "].) The trial court's determination to the contrary appears to have been based on a misunderstanding of plaintiffs' theory of recovery and a misapplication of controlling law.

Specifically, the trial court believed that plaintiffs were focused on the idea of apportionment and concluded that LLCs with income solely within California would have "no apportionment claim at all." The trial court appears to have discounted these clearly-numerous Bakersfield claimants and was further concerned that almost all of the Ventas-type claims might have been mooted by the FTB's payment to those claimants of apportioned refunds. Under these circumstances—and in conjunction with its previously described improper focus on potential class members' ultimate right to recover—the trial court erroneously concluded that it could not determine numerosity on the record before it. But, as discussed above, plaintiffs in this case are not arguing for apportionment: Rather, they argue strenuously and repeatedly that *all* LLCs that paid the unconstitutional

25

levy are entitled to a full refund, regardless of where their income was generated. Whatever the ultimate merits of their position, for purposes of class certification, this would include all Bakersfield claimants, a group sufficiently numerous in and of itself to support certification. Thus, even if Ventas claimants that have received apportioned refunds are excluded from the class (a legal issue which certainly appears to be a predominant common question for this subset of potential class members) and even if certain individual claimants are ultimately deemed unable to recover or to recover only apportioned refunds, numerosity is still established. (See *Hendershot*, *supra*, 228 Cal.App.4th at pp. 1223-1224 [consideration of a defendant's affirmative defenses inappropriate for purposes of numerosity analysis].)

2. *Predominance, Typicality, and Superiority*

Once it is clarified that plaintiffs have proposed ascertainable and sufficiently numerous classes, the trial court's remaining concerns—with respect to predominance, typicality, and superiority—are easily resolved in favor of certification. "The 'ultimate question' the element of predominance presents is whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.] The answer hinges on 'whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment.' [Citation.] A court must examine the allegations of the complaint and supporting declarations [citation] and consider whether the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible. 'As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.' " (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021-1022, fn. omitted.) Here, as stated above, the plaintiffs' theory of recovery is that former section 17942 is unconstitutional as to both in-state and in/out-of-state LLCs; cannot be reformed; and is therefore void, entitling *all* LLCs that paid the levy under the fundamentally flawed statute to a full

26

refund. This is manifestly a legal question common to all proposed class members that is highly amenable to class action treatment. (Cf. *Thomas*, *supra*, 53 Cal.App.4th at p. 1095 [individuals' administrative claims for tax refund are "obviously appropriate for class treatment, since they all make the same legal claim against the City"].) Moreover, it is not a question that has already been decided by *Ventas*, as argued by the FTB, because *Ventas* expressly limited its holding authorizing a partial remedy in that case to its particular facts. (*Ventas*, *supra*, 165 Cal.App.4th at p. 1233, fn. 20.)

The trial court, while indicating that it believed "these issues probably could be resolved as a general matter," concluded that it could not evaluate predominance without knowing what grounds for relief were stated in the individual claims for refund filed with the FTB, as a subsequent court proceeding may only be based "upon the grounds set forth in that claim for refund." (§ 19382; see also § 19322.) The trial court was also convinced that it could not consider any issues related to the legality of the partial refund remedy set forth in new section 19394 because the underlying refund claims had been filed prior to its enactment and thus could not possibly have raised the validity of that statute as an issue. As discussed above, however, the FTB in this case actively solicited claims for total refund from LLCs based on a general statement regarding the unconstitutionality of former section 17942. Thus, it is likely that the vast majority of the claims which were filed in response to the FTB's suggestion contain a general constitutional challenge to the levy statute and seek a full refund. Moreover, as plaintiffs correctly assert, " '[i]t has long been the policy of California courts to liberally construe claims for refund of taxes.' " (*J. H. McKnight, supra,* 110 Cal.App.4th at p. 988.) This is in recognition " ' " 'that many, if not most, applicants are [laypeople] who would be denied hearings if formalized technical rules were followed.' " ' " (*Ibid.*) And, in *Preston v. State Board of Equalization* (2001) 25 Cal.4th 197, our Supreme Court held that a tax refund claim "sufficiently raises any contention that is intertwined with or clearly implied from contentions explicitly raised in the claim." (*Id.* at pp. 203, 206.) As set forth above, the Bakersfield and Centerside claims in this case both state that the levy is unconstitutional and void and thus the LLCs are entitled to a full refund. While we do

not here delineate the precise scope of all of the issues that may be raised in the trial court based on the underlying claims here at issue, we do conclude that plaintiffs have clearly raised the issue of the appropriate remedy for the constitutional violation alleged, and thus issues involving the validity of section 19394 and related portions of AB 198 are sufficiently intertwined with contentions that have been explicitly raised to allow for their consideration in these proceedings. As such, they represent additional predominant legal questions common to all proposed class members.

In sum, if plaintiffs are ultimately successful on the merits in this action, the FTB's liability to all class members for a total refund will be firmly established, subject only to proof of each individual's entitlement to recovery. Indeed, even if plaintiffs are unsuccessful on the merits and it is determined that only an apportioned remedy is appropriate, this is also a finding on liability common to all proposed class members. Thus, predominant common questions exist here supporting class certification.

As for typicality, the purpose of this requirement " 'is to assure that the interest of the named representative aligns with the interests of the class.' " (*Seastrom v. Neways, Inc.* (2007) 149 Cal.App.4th 1496, 1502.) " 'The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." ' " (*Ibid.*; see also *Classen v. Weller* (1983) 145 Cal.App.3d 27, 46 [class representatives need not have identical interests with the class members; they must only be "*similarly* situated"].) Although the trial court found it "not useful" to discuss typicality further given its other concerns, it did acknowledge the FTB's claim that Bakersfield might not be an adequate class representative for class members with income solely within California, since Bakersfield claimed to have derived income from both in and out of state. Again, however—given plaintiffs' theory of recovery—the state in which an LLC's income was generated is essentially irrelevant. Rather, plaintiffs allege that all potential class members (including themselves) were subjected to the same unconstitutional levy and have been similarly injured by not

receiving a full refund from the FTB. Thus, it appears that typicality has been established.

Finally, and without any real analysis, the trial court mentioned that it was "unable to conclude that the class action approach is superior to an alternative, which is to move forward with declaratory relief and then if appropriate calculate the sums owing to taxpayers (or perhaps instruct the FTB to do so)." On appeal, plaintiffs challenge this conclusion on multiple grounds. For instance, they point out that under article III, section 3.5, the FTB is required to apply statutes (such as section 19394, which purports to establish an apportioned remedy for these proposed class members) until they are held unconstitutional by a court of appeal. Thus, the FTB could avoid or delay classwide relief by refusing to appeal an adverse judgment. (Cf. *Miller v. Woods* (1983) 148 Cal.App.3d 862, 872 [finding no "lawful authority" to support the denial of class certification based upon the hope or expectation [a state agency] will voluntarily grant class relief after an adverse appellate decision in an individual's case].) In addition, plaintiffs persuasively describe the burden on the courts that would result from scores of claimants filing individual refund actions to preserve their rights should class certification be denied (see *Fierro v. Landry's Restaurant, Inc.* (2018) 23 Cal.App.5th 325, 336-342), and the likelihood that many such claimants might forego relief entirely due to the relatively small amounts of money at issue for each individual LLC.

The FTB has no real response to these arguments, seemingly and redundantly asserting only that the Legislature has determined that the class claim procedure set forth in section 19322 is superior to a general class action filed pursuant to Code of Civil Procedure section 382 in this context. That ship has sailed, however, and we see nothing in this case indicating that class treatment in accordance with Code of Civil Procedure section 382 would not be superior to individual litigation for resolving this dispute. (See *Linder*, *supra*, 23 Cal.4th at p. 435 [a class suit is appropriate " 'when numerous parties suffer injury of insufficient size to warrant individual action and when denial of class relief would result in unjust advantage to the wrongdoer' "]; *Thomas*, *supra*, 53 Cal.App.4th at p. 1095 [where "separate fully exhausted administrative claims" had been

29

filed, "[i]t would be wholly injudicious to hold that our busy and overburdened trial courts must be besieged by a multiplicity of identical taxpayer actions, when one such action, as here, is sufficient to afford the parties a timely and effective remedy consonant with the requirements of due process"]; see also *Employment Development Dept. v. Superior Court* (1981) 30 Cal.3d 256, 266 [where a class is certified a court can often "devise remedial procedures which channel the individual determinations that need to be made through existing administrative forums"].)  We thus reverse the trial court's denial of class certification in this case.

### III. DISPOSITION

The judgment is reversed and the case remanded for certification of a class or classes consistent with this opinion.  Plaintiffs are entitled to their costs on appeal.

_____
REARDON, J.

We concur:

_____
STREETER, ACTING P. J.


_____
SCHULMAN, J.*


*Judge of the Superior Court of California, County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


A140518 _Franchise Tax Board Limited Liability Corporation Tax Refund Cases_

| | |
|---|---|
| Trial Court: | City and County of San Francisco Superior Court |
| Trial Judge: | Hon. J. Karnow |
| Counsel for Plaintiffs and Appellants: | Silverstein & Pomerantz LLP<br>Amy L. Silverstein<br>Edwin P. Antolin<br>Edward J. Beeby<br><br>Calvo Fisher & Jacob LLP<br>William N. Hebert |
| Counsel for Respondents: | Attorney General of California<br>Kamala D. Harris<br>Senior Assistant Attorney General<br>Paul D. Gifford<br>Supervising Deputy Attorney<br>Joyce Hee<br>Deputy Attorney General<br>Marguerite C. Stricklin |

A140518 *Franchise Tax Board Limited Liability Corporation Tax Refund Cases*